Case No. 25-1224 Good afternoon, Your Honor, and may it please the Court. My name is Martin Beanstock. I'm the attorney for the plaintiff, Sarah Morgulis. The defendant is a company called Bus Patrol. They're in the business of providing turnkey, end-to-end services for the school bus stop arm program. And I think, unfortunately, too many of us have had experience with that program. And the key point on the program in this case is that there are three elements to a violation. Under long-term, well-established New York law, you've got to pass the bus, but the bus has to be stopped to load or unload passengers, and the bus has to have specific markings and features. And when Bus Patrol went to implement this program in New York, and it's a national company, when it went to implement this program in New York, it focused only on one element, and it ignored entirely those two elements that I mentioned. It didn't collect the evidence. It didn't review the evidence. So there was no evidence of a violation. When they issued the notices of liability, when they crossed the town and they issued them in the town's name, they included on the notices of liability a false sworn statement. The statement swore that in the name of the town employee, based on my review and inspection of the evidence, I swear or affirm under penalty of perjury that there is sufficient evidence that a violation did occur. But that was false, because they hadn't reviewed specific sufficient evidence to reach that conclusion. They'd reviewed only evidence about a single element of the violation, not the two other elements of the violation. Why would this person make the presumption that if somebody went past the bus with its stop sign flaps extended, that the bus they were going past was a school bus, which would have markings as a school bus, and that the reason these school buses stop with their flaps out is so the kids can get on and get off? Right. So under New York law, you can't just infer the elements of a violation, and I think that's a general rule. But in this case, there's decisional law from the New York Court of Appeals going back 20 years and other cases. And then there's the Croce decision that took place. And we filed suit before the Croce decision was issued, and it said specifically that. It threw out the notices of liability. It said it was improperly issued because there wasn't evidence of the two other elements of the violation. So these are the reason the elements of a violation is because they require evidence in order to establish that there's been a violation. You can't just infer away the requirements. So under New York law, you've got to establish those elements of the violation. And that's, you know, clear decisional law. In fact, the New York State legislature then later came along and passed a law that said we will allow you to make certain inferences as to the opening and the – as to the students loading or unloading of the bus. And then it said when you want to establish that the bus had the specific markings that are necessary, you've got to do these things. You've got to identify the bus number on the notice, and you've got to have Department of Transportation documents demonstrating that this bus is – the bus does have those markings. So the New York State legislature clearly didn't believe that it was sufficient just to infer away these things. Croce said it isn't sufficient, and the New York State legislature kind of validated that by later on – not retroactively, but later on altering the statute to make it easier for companies to establish these violations. So why did your client pay? So – so the client – I mean, if it's clear – I mean, you would know that whoever looked and saw the image of the car going past the extended stop sign is not somebody who is – who is hanging off the bus looking for its signs and its lights, right? I mean, why did you voluntarily pay? So – so the – a couple of things. The penalty is imposed not on the driver, but on the car owner who may or may not have been driving the car. Well, if he wasn't, then that's a defense? It's not a defense. It's a penalty imposed on an owner of a car that is – that passes a school bus. It's not a – it's not a criminal penalty, but the penalty under New York law is imposed for passing – for if you are the owner of a car that passes – It's attributable to the vehicle owner regardless of the driver. Exactly. Exactly. And it's not points on your license. It's just – you know, it's just the $250. It's just $250, so you just pay. Well, so – so what we've got – You just pay, but then there's a doctrine that if you voluntarily pay without fighting it, which, of course, most people do because that's how the whole system works. It may be rotten, but that's just how it always works. Then you voluntarily paid, and there's a doctrine that takes care of that. Right. So that's true except when there's been a mistake of fact. And here we've got not just a mistake of fact, but we've got fraudulent statement that induced the mistake of fact. Right? The owner of the car assumed that somebody was actually there looking to make sure that the lights were on in the bus? The owner of the car had good reason to believe that the town had collected evidence of a violation, and the town didn't have evidence of a violation. It had evidence of one element of a violation. So the – But isn't it evidence – isn't it evidence that the bus is properly equipped? If you want to challenge it, you can challenge it, but I think it would be a waste of anybody's time to try to find out whether a school bus contains the word school bus painted on it. But there was no evidence, and it's a lot more than just having the name school bus on it. But there was no evidence. But the notice of liability swore that they had such evidence. And the form of the oath is noticeable because it says, I've reviewed the evidence, including recorded images. And they only – and we have the training materials. And we've since had deposition testimony in, you know, in the State court case. And they only reviewed the recorded images. There was no evidence at all that they reviewed related to the two other factors. What about the State court case? So this – two of our claims, fraud and negligent misrepresentation, are claims that were upheld in an identical case in New York State. It's a Kudinski case. It's in our papers. And the case is proceeding. Now, the case is against the town in that instance. This is against the bus patrol. And this is against the bus patrol. And that's part of the issue. I mean, that's the central issue, which is you have the town acting in a particular way. But you, in this case, allege that the bus patrol itself engaged in a fraud. Yes. And that's the problem that I'm having, the question that I've got. So I think that's actually a very strong part of our case. Fraud under New York law, it's not the mouth that speaks the fraud is the one who's liable for fraud. It's people who are – have knowing participation, right? That's those – if you've got knowing participation in the fraud, then you can be held liable for fraud. Or if you provide assistance to someone, then you can be liable for aiding and abetting the fraud. We believe in both cases. So with respect to the fraud, the complaint alleged that these NOLs are issued by local governments in the name of the local government and in the name of a local government specialist, and that they reflect a determination by the issuing government. So where is the intent to defraud on the part of bus patrol? So the first thing I said when I stepped up here was that – Just fraud as opposed to aiding and abetting. Go ahead. So the first thing I said when I stepped up here is it's a turnkey operation. And when you're dealing with local governments and a private contractor like this, it really is turnkey, right? There's someone who sits down at a computer monitor on behalf of the town. They're showed a video. They're trained. And the video's – they're trained to say, if the car passes the stop sign, click accept, right? Everything else, everything else. So here's a legal turnkey. You've got Rule 9b, which requires, even in the context of aiding and abetting fraud allegations or claims, that you make these allegations with particularity, including some intent to defraud or intent to aid and abet. And I'm having a hard time seeing it in this case. So the – let me take it in two steps. First, under Skrine and under New York law, and Skrine's been cited by this Court a number of times, if you swear under oath – if you swear under oath that a particular fact is true, then – and that fact is not true or you don't know that that fact is true, then that is recklessness sufficient to demonstrate fraud under New York legal rules but under 9b as well. You can't swear an oath and say, whoops, I didn't know. So this oath by the town is demonstrably false, and it's allegedly, I guess, false. And they were under a duty – you're under a duty not to swear falsely. You've got to know the facts that you're relying on. But the town itself, like I said before, there's a clerk at a screen for five seconds who clicks the accept button because that's what they're trained to do. But Bus Patrol is the company. They're making, you know, hundreds of millions of dollars on this. They're responsible for the entirety of the process. They designed the whole thing. Not only do they collect the evidence, but they devise the training rules. Their contract requires them to be knowledgeable about the State rules, the State laws. They devise the process for clicking that accept button. What is the scribe case? Is that cited in your brief? It is, and I don't have a citation for you right now. I'm sorry. But it's in the brief. Okay. It's a black letter idea that – Oh, got it, got it. Right. It's a black letter in New York law. You can't swear something falsely and then deny, you know, deny knowledge. So to attribute it to them, I mean, they run the whole program. They've got the turnkey control over the whole thing. So when – including understanding and knowing local laws, understanding the requirements of New York law. So, look, we, of course, we don't know what the communications were between bus patrol and the town. We don't know if bus patrol said to the town, you know, we're going to pull one over on these guys or whether bus patrol just itself participated, had a duty to know, drafted the sworn statement, and then – Thank you. Thank you very much. You've reserved some time for rebuttal. We'll hear from counsel for bus patrol. Good afternoon, Your Honors. May it please the Court. My name is Timothy Sini. I represent bus patrol. I'll pick up on the Scrine case because Your Honor had inquired about it. The site is 30 AD 2nd, 707. It's a Second Department case and has nothing to do with any of the facts alleged in this case. So what is it? It's a case that involves buyers of a home who sued the seller for fraud and deceit. They dealt with some representations made about that property, and I don't see how it has any relevance here. But the bottom line here is that the plaintiff cannot plausibly allege facts that make up any of her causes of action for the following undisputed facts. The plaintiff was issued a valid notice of liability that complied with VTL section 1174-AG. It had all the components of the statute. It explained to the plaintiff that she had the right to contest liability and gave her detailed instructions on how to do that. It included ---- In the notice? Yes. Yes, Your Honor. Or in the associated website? No, the notice. The notice itself explained in detail. It stated that to request a court date in all bold and caps. And it continued, You may deny liability of this fine by signing and mailing the remittance notice below. And then below it, it stated, In all caps, use this form to deny liability. It also warned partly in bold and caps, Payment is considered an admission of liability and waives your right to a hearing. It repeated that warning by saying in all caps and partly bolded, Failure to pay the penalty shown or to contest liability in a timely manner is an admission of liability and may result in a default judgment entered against you. Then the NLL itself contains ---- The only argument, as I understand it, that is being offered against that is that the people who receive this notice are defrauded into believing that the ---- that bus patrol is ascertaining that each bus is properly, has proper signage and that it is stopped for the purpose of awaiting kids to board or get off. And there are several problems with that argument. First of all, the notice of liability itself contains the photographs of the evidence. And then it provides a link. And it gives you instructions on how to access that link. And if you do access that link, you actually see the video evidence. So the town of Hempstead here is actually providing the very evidence upon which that specialist certification is based. What does that evidence show? That evidence shows, in this case, it shows the ---- Does it show kids are getting on or off? Because actually kids don't have to be getting on or off. You just have to be waiting for them. That's right, Your Honor. There are two scenarios where kids don't have to be getting on and off for there to be a violation. One is if a bus is stopped because there's a bus in front of it that's stopped for the purposes of receiving or discharging passengers. And the second is if there's a stop, and I know this happens at my home all the time, school bus pulls up, opens the door, the kids are late, you know, so it's not that if the school bus driver doesn't see kids, they don't open the door. They always open the door. And no one may not get on that bus. That's still a valid stop where you can't pass the school bus. Put that aside for the moment. The evidence in this case showed the plaintiff passing a stopped school bus, yellow in color, with a stop arm extended, with its red lights flashing, on a school day, at a time, 333 p.m., consistent with school drop-off. If one cannot reasonably infer from those facts that there is sufficient evidence to merely issue ---- You're saying infer if one can't swear to it. That's right, Your Honor. The point is there's nothing fraudulent or negligent about that specialist certification for the following reasons. One, it's not talking about the standard of proof required for a hearing. This is to issue the NOL. Two, at the time that that specialist certification was issued, judicial hearing officers, third-party neutral arbiters, and in the case of the town of Hempstead, it was Nassau County judicial hearing officers employed by the county, most of them who are retired judges, were finding liability based on that same exact evidence. And lastly, the evidence, as I mentioned, showed the plaintiff passing the school bus, yellow in color, stop arm extended, on a school day, red lights flashing, consistent with a school drop-off. And Croci does nothing to change this. And the reason why Croci does nothing to change this is because Croci is about the sufficiency of the evidence at a hearing. It's akin to a criminal defendant coming before this court and making a sufficiency of the evidence argument when they took a plea. You can't do it. But even more than that, Croci was issued seven months after this NOL was issued. So clearly it bears zero on the intent of the specialist who's making the certification. Moreover, the decision in Croci was not considered on solid ground. So even post-Croci, NOLs were issued throughout New York State. First of all, Croci is only controlling in the 9th and 10th judicial districts, and bus patrol had programs throughout the state. Secondly, the law was amended in April of 2024, so there's only a short window of time between when Croci came down in November and when the law was amended in May. And judicial hearing officers were still finding liability during that time period between Croci and when the law was amended. And the law wasn't amended because they thought Croci was correct. Quite the opposite. State legislators realized that they needed to fix the issue, and so they simply developed presumptions and a prima facie case mechanism to make it easier to prove these violations. In fact, Assemblyman Levine, who is a lawyer, commented that the reason why they're passing the legislation is because Croci got it wrong. But at the end of the day, at the time that this specialist certification was issued, it was true, in fact, and you cannot infer any sort of intent, much that the plaintiff plausibly alleged it in the complaint. And that's because they talked about a huge profit motive. Well, profit motive alone is not sufficient to infer intent. And here you have a situation where the specialist certification was issued at a time when judicial hearing officers were consistently finding liability based upon this evidence. And the other point I would say is in terms of intent, if the intent was to coerce or to trick or deceive someone into essentially pleading guilty, paying the fine, why would they provide the evidence? The evidence actually is not required under the statute. So 1174-AG is very specific in terms of what the NOL needs to contain, the name, the address, the place, the date of the violation. This is on a motion to dismiss. That's right. And make a very compelling set of arguments, marshalling a set of very compelling facts, but we've got these allegations in front of us that don't have the color, I think, or background that you're providing. What is it about, particularly related to, as you heard the questions that I think are geared towards or directed towards the unjustified impeachment claim, but particularly related to the fraud claim, what is it about these allegations that are deficient? Sure. So we'll go through each element as the Court lays it out. So first of all, and, Judge, you mentioned this before, bus patrol is not the speaker. It's the town that makes the certification. They allege that throughout the complaint. There's over 48 allegations in the second amended complaint that make that clear. The appendix has documents in it that make that clear. They sued the wrong party here. End of story. They're also, just to take it one step further, bus patrol has zero role, zero role in the hearings. They're not even present. And that's a town prosecutor that prosecutes the NOL, and it's a county judge or judicial hearing officer that adjudicates liability. With respect to falsity, as I mentioned, judicial hearing officers were finding liability based on these allegations. So there's no reason to think that at the time the specialist certification was made that it was false. The evidence that the specialist relied upon included the plaintiff passing the school bus, yellow in color with the stop arm extended, red lights flashing on a school day consistent with school drop-off. And the Croce decision is of no bearing because it wasn't issued until after the specialist certification was made. As to intent, you cannot plausibly allege intent when you're provided the very evidence upon which the NOL specialist certification is based because you can't allege reasonable reliance when you have the actual evidence. Mr. Beasley, your friend says that there was a state court proceeding where it, I believe, it got beyond the motion-to-dismiss stage and is in discovery. So in Kandinsky, there were, I believe, 12 claims. Ten of them were dismissed on a motion-to-dismiss. The two claims that remain are fraud and negligent misrepresentation. That's of no moment here because, as Your Honor noted, that's against the town. And so, for example, the argument that we're not the speaker doesn't apply there. But also there are several arguments that were not advanced by the town nor considered by the court that we're making here. One of them is that the specialist certification was actually true at the time it was made. And the other issue is of reasonable reliance. Town didn't advance that argument and the court didn't pass upon it. And to me, that's a very important issue here because the plaintiff was provided with the very evidence upon which the NOL was based. In addition, as to the negligent misrepresentation claim, the Kandinsky court didn't even pass on, had no analysis on whether or not there's a special relationship. There has to be privity or something close to privity to make out a claim for negligent misrepresentation under New York State law. Clearly, bus patrol has no relationship with Margulis. They've never met. They've never spoken together. And the last point, and I think this is actually important, we have the Iqbal standard here. And the plaintiff has to plausibly allege facts. And because she was given the evidence, told how to contest liability, and then admitted liability and voluntarily paid, she can't make out the causes of action. And just to pick up on Judge Jacob's point, the voluntary payment doctrine also provides an independent basis to preclude all of her claims. The letter case is instructive on that. And I see that I'm out of time, so unless there's any other questions. Thank you very much. Thank you, Your Honor. I appreciate it. Mr. Pista, the bubble. Thank you. So Mr. Ceney asked a question. He said, why did they provide the notice, the sworn statement, the notice of liability? It must have been for some good reason. But there's, I mean, it's bizarre, right? Here's a notice of liability. It's got statutory requirements. No question that they met the facial statutory requirements to issue this notice of liability. But then they included a sworn statement in it that just wasn't true. Why? What's that statement doing there? It's extremely strong evidence of fraud to include an unnecessary statement in the notice of liability. And so what's the purpose of including a statement that says we've got all the evidence, I swear under penalty of perjury we've got all the evidence? The purpose is to defraud you into not pursuing your rights and into submitting your payment, which, you know, is no longer voluntary because it's under mistake. So that statement is, I mean, it's a glaring problem. Why is there a false sworn statement in their notice of liability? So therefore, if you're going to say that payment was made under a mistake, have you alleged that that car did not pass a school bus with its sign extended? We've alleged that there's insufficient evidence to conclude the car passed. I'm just asking, you were defrauding into not, into paying and not challenging. That would seem to suggest that you're willing to allege, though I doubt it, that the vehicle owned by your client did not pass that school bus on that day. So, Your Honor, when you say that school bus, we have no idea what school bus. There's no record of what school bus it was, and there's no record of anyone getting on or off. Those are elements of a claim under New York. We can't just wish them away. They can't just wish them away. You know, the — You're — Pardon me? You're not saying that the vehicle did not pass the school. You're saying you have no idea whether it passed the school bus or not. But there's a photograph. You can go and you can look at it. I'm saying that there are three distinct elements, and two of them are not known to anyone as to what happened. You're saying you were defrauded into not challenging the ticket, essentially. So that means that you would have —  — that you would have good ground for challenging it, but for the fact that you were deluded by these misrepresentations. Correct. So — but you haven't alleged that the ticket was invalid in the sense that the vehicle owned by your client did not pass a school bus that was lit up for loading and unloading. We do allege that. We do allege there's not evidence that our client passed it. I understand you're saying there's no evidence, but you're not saying — that's quite different from saying you didn't do it. Right. So the notice — the notice of liability — just take a step back. The notice — let me take a step back and then provide some context. The notice of liability — You're saying — you're saying that if we had not been deluded by the representation, we would have falsely — we would have falsely alleged in court that we did not — my car didn't pass this stop school bus. So it's not — look, these are, you know, these are ordinary people. It's not their burden to go to court and prove that the town has not sufficiently established the violations. It's the town's obligation to establish the violation. And so they can't — they can't — you know, they can't sit there and write out tickets without basis. And just a couple of contextual points. One is the notice of liability under the statute, it's not a summons. It's not a request for a plea. It's an imposition of liability. It's the town saying you are liable. That's the way the statute is written. I'm just asking a different question, and I have my answer. Thank you very much. Thank you, Your Honor.